## PEOPLE *ex rel.* CROUSE *v.* COWLES.

December, 1868.

Reversing 34 *How. Pr.* 481.

⊥ commitment of a judgment debtor, on an attachment issued for refusal to obey an order, made in supplementary proceedings, that she apply, to the satisfaction of the judgment, a sum of money belonging to her which it has been duly found she has in her possession, is a

---

commitment for contempt; and the debtor is not entitled to the liberties.*

A judge cannot, on *habeas corpus,* determine whether the sheriff is bound to admit an imprisoned debtor to the liberties.

Crowel and others, in October, 1866, recovered a judgment in the supreme court against Marinda Wheeler, a married woman, for seven hundred and twenty-three dollars and twenty-four cents. Execution was issued and returned unsatisfied. The defendant was examined before a referee in proceedings supplementary to the execution. The referee reported that she had nine hundred dollars in cash in her possession; and the judge made an order, requiring her to pay the amount of the judgment and forty dollars costs, within ten days, or that, in default thereof, an attachment issue against her. Reported in 33 *How. Pr.* 337.

The order was duly served upon her, and she refused to comply. A writ of attachment was then allowed by the court, and issued, commanding the sheriff to attach her, and commit her to the county jail, and detain her there in close custody until she should obey. She was, accordingly, arrested and committed to the county jail.

The county judge, on her application, granted a *habeas corpus,* directed to the sheriff; and, upon the return showing these facts, decided that said Marinda was entitled to the liberties of the jail, upon executing the proper bond; and he ordered her discharge from close custody upon executing such a bond.

*The supreme court,* on *certiorari,* reviewed the proceedings of the county judge, and held that the statute authorized the at-

---

* It is otherwise of disobedience of an order merely for the payment of money where the defendant is not adjudged to have had it. People *v.* Campbell, 40 *N. Y.* 133. The significance of this case is in its applying the rule of contempt to the disobedience of the order, because it had been adjudged that the defendant had in her possession sufficient money to pay the judgment, although there had been no adjudication that a contempt had been committed in the refusal to pay over. See also Matter of Watson, 5 *Lans.* 466, affirming 3 *Id.* 408, where the general principles laid down by Woodruff, J., are approved, in application to an order of a surrogate in a case in which it did not appear that the executor ever had the fund.

tachment; but that the process was a mere substitute for an execution against the person (citing Van Wezel *v.* Van Wezel, 3 *Paige*, 38; People *v.* Bennett, 4 *Id.* 282); although they conceded that if the order had directed the payment of the judgment out of any particular fund, or had directed the defendant to do any act to effectuate such payment, disobedience would have been a contempt for which, on a proper conviction, a fine might have been imposed, upon which defendant, even though a married woman, might have been imprisoned as upon criminal process. As in this case there was no hearing and no adjudication of contempt, and no fine, they were of opinion that the attachment was merely a civil process, and defendant, being a female, could not be arrested thereon, and the county judge might properly have discharged her. They accordingly affirmed his order. Reported in 34 *How. Pr.* 481.

The plaintiff appealed.

*George F. Comstock,* for the appellant;—Insisted that a married woman could be imprisoned for contempt; and that in this case she was not entitled to the liberties; and even if she were, the statute made it the duty of the judge to remand absolutely. Besides cases cited in the opinion, he cited Reynolds *v.* McElhone, 20 *How. Pr.* 454; People *v.* Kelly, 22 *Id.* 309; Seaman *v.* Duryea, 10 *Barb.* 523; 13 *Abb. Pr.* 459; 11 *N. Y.* (1 *Kern.*) 324; Brush *v.* Lee, vol. 1 of this series, p. 238.

*J. Welling,* for respondent;—Insisted that the order was simply a proceeding as for a contempt, to enforce a civil remedy. Pitt *v.* Davidson, 37 *N. Y.* 235; S. C., 3 *Abb. Pr. N. S.* 398; 4 *Blackst.* 284. That a woman is not liable to imprisonment in such a case, by construction. Hovey *v.* Starin, 42 *Barb.* 435. The process was civil process, the judgment only bound the separate estate; and the return of the execution unsatisfied was conclusive on the relator.

WOODRUFF, J.—The distinction between a commitment upon a precept issued for the disobedience of an order for the payment of a sum of money and a commitment upon a conviction of misconduct, punishable by fine and imprisonment, is very

clearly indicated in the statute, and has been repeatedly declared by the courts. 2 *R. S.* pp. 534, 535, 536, 537.

The proceedings are unlike, and the decision and penalties imposed are different.

A precept to commit (section 4), for the non-payment of money, in obedience to a rule or order, issues of course, and *ex parte*, on proof by affidavit that personal demand has been made, and that the money is not paid. No proof that the party has money wherewith to pay, is necessary. The order for such payment being made, and presumptively made on sufficient grounds, it is not open to examination upon its merits to raise an excuse for disobedience; insolvency will not prevent the issuing of the precept, nor entitle the party committed to its revocation. Under the act of 1843, the party showing inability has, after commitment, an appeal to the discretion of the court; but in the first instance, whether there be actual contumacy or not, whether the party be able to pay or not, if a case has been presented in which the court had jurisdiction to make the order for the payment, the precept and the commitment follow if the money is not paid, whatever excuse the party may have for disobedience. 2 *R. S.* 535, § 4.

Nor is there any adjudication or conviction of misconduct, nor anything in the nature of punishment imposed. The defaulting party is and can be subjected to no infliction punitory in its nature.

By whatever technical name such a precept be called, and whether the consequences in respect to the right to the liberties of the jail are or are not the same, the nature and the object of such a precept and of a *capias ad satisfaciendum* are identical, and the period of commitment and mode of satisfying their requirements in order to a release, are also identical.

A commitment of the other description is preceded (§ 5 *et seq.*) by a judicial inquiry into the question of the guilt or innocence of the party charged, in which he has an opportunity to appear and answer, and be heard in his defense; and the conviction is followed by punishment, punishment in form and in fact; the judgment pronounced is fine or imprisonment, or both, as the nature of the case may require, and where the misconduct whereof the party was convicted has produced in-

People *ex rel.* Crouse *v.* Cowles.

jury to a party, such fine shall be at least sufficient to indemnify him. But though no such injury appears, the court may nevertheless impose a fine and imprisonment for the public wrong which has been done.

All this is a provision for the infliction of punishment for an offense, an offense tending to impair the efficiency of our courts in the administration of justice, to bring them into disrespect, and it may in some of the cases embraced within the statutes, be incidentally injurious to parties.

The statute itself calls it "punishment," by providing that where the offense be also indictable, and on indictment the offender is convicted, " the punishment already inflicted " shall be taken into consideration " in forming the sentence " of the court.

The process in the former case is strictly and purely remedial. In the latter it is punitive, and in most instances purely so.

By 2 *R. S.* 755, §§ 7 and 8, persons duly sentenced to imprisonment upon conviction for any contempt or misconduct, cannot be let out of prison on bail, or otherwise, by the keeper of the prison, without lawful authority, but are to be kept in rooms separate and distinct from convicts under sentence.

In declaring who shall be entitled to the liberties of the jail, the statute designates every person who shall be in custody of the sheriff of any county by virtue:

1. Of a *capias ad respondendum;* or,

2. Of an execution in a civil action; or,

3. By virtue of any attachment for the non-payment of costs in a civil action, or;

4. In consequence of a surrender in exoneration of his bail.

Whether a party committed by precept for the non-payment of money other than costs, is entitled to such liberties, depends upon the true construction of this statute, or, in other words, whether the precept in the present case was an execution in a civil action.*

That a commitment upon a conviction and sentence to fine

* As to the remarks following on this question, see statement at the end of this case.

and imprisonment is not such an execution, is on all hands conceded.

1. The object of the precept and an ordinary *ca. sa.* are identical.

2. The form of the precept and a *capias ad satisfaciendum* out of chancery, are, in every material respect, identical.

3. The prisoner is, in the terms of both, only held until he pays the money mentioned.

4. Judged by its office and purpose, and by its sole legal effect and operation, it is an execution against the body.

5. The use of the term " execution " does not necessarily import any precise form of process, and properly includes all processes which are the same in their purpose, office and effect.

In my judgment, the precept in the present case is within the designation in this statute, and upon that the whole question whether the person committed was entitled to the liberties of the jail, depends.

On first examination of this statute, I was much impressed by a thought suggested by the special provision therein for admitting to the liberties a person in custody by virtue of any attachment for the non-payment of costs in a civil action (subd. 3).

The authority to commit for the non-payment of costs, is part of the same section which authorizes the precept to commit for the non-payment of a sum of money ordered to be paid, and it should apparently be treated as involving precisely the same legal consequences, and no other.

If then by force of the admission to the liberties of a person " held in custody by virtue of an execution in a civil action " (subd. 2), the party committed by precept in such case is entitled to the liberties of the jail, why was the third subdivision added—the case was already provided for—and if the legislature intended that a person committed by such a precept for the non-payment of money, why did they confine the third subdivision to the non-payment of costs ?

Whether the commitment " by virtue of an attachment for the non-payment of costs," means to describe another case than a commitment under the section we are considering, by

precept, which is the process specifically described, may or may not be doubtful. But it was at one time questioned whether a person committed by virtue of an attachment for contempt, in not paying costs, was a person held in custody on civil process, within our early statutes, by which jail liberties were established.

It had been decided that such a commitment was civil process within those acts. Jackson *v.* Billings, 1 *Cai.* 252. The phraseology of the statute was changed in the Revised Statutes, and the language above quoted was employed in the other subdivisions, and to prevent doubt, the case of an attachment for non-payment of costs was expressly provided for.

Upon the whole I do not think this circumstance sufficient to overcome the reasons for regarding the precept in question as an execution within the statute. The decision referred to tends to support this view in suggesting the distinction between the civil remedy to enforce an order of the court for the payment of money, and the punishment of a contempt, which is a proceeding criminal in its nature.

The question is very fully discussed by the vice-chancellor, in Van Wezel *v.* Van Wezel, 3 *Paige*, 38, where a party was committed by precepts for contempts, in not paying moneys ordered to be paid for temporary alimony. He applied for a discharge from imprisonment under the act authorizing the discharge of persons imprisoned by virtue of one or more " executions in civil causes," and the vice-chancellor held that such a precept was included in this description, and the chancellor declares that the process was " an execution in a civil cause." The identical question now before us, and arising on a precept issued in virtue of the same section of our statutes. 2 *R. S.* p. 535, § 4.

And in People *v.* Bennett, 4 *Paige*, 282, the chancellor re-iterates, in reference to the question whether a party committed is entitled to the liberties of the jail, the distinction already stated between a commitment by precept for the non-payment of money and a commitment upon a conviction and fine as punishment for a contempt in misconduct punishable by fine and imprisonment. In the latter case he decides that the prisoner is not entitled to the jail liberties, and declares that in

III—33

the former "he is in execution in a civil action," and is entitled thereto." See, also, Patrick *v.* Warner, 4 *Paige,* 397.

I might have reposed upon these cases and the very clear and satisfactory opinion of Mr. Justice HOYT in the court below, but I became much interested in the question, and was greatly impressed by the elaborate and able argument of the counsel for the appellant, on the hearing of the appeal, and have perhaps unnecessarily occupied time without throwing new light upon the question.

Some of the remarks of Mr. Justice COWEN, in People *v.* Nevins, 1 *Hill,* 154, 155, would, at first view, seem to indicate that there was no difference between a commitment by precept under section 4 of the statute, and a commitment on conviction and sentence, by way of fine, for the contempt. But those remarks were made in reference to the validity of the commitment and the power of a supreme court commissioner to declare it invalid. There the proceeding was against an attorney, by attachment, to punish him for official misconduct, in not paying over moneys collected for his client, and it was, on interrogatories and answer thereto, adjudged that a fine be imposed, and that the attorney be committed until the fine and costs be paid. In form the proceeding was for a contempt, punishable by fine or imprisonment, or both, and the prisoner was convicted and fined. The question, whether in such case the commitment was an execution in a civil action, did not arise. The court intimate, that there was in that case an election to proceed summarily by precept under section 4, instead of by attachment, interrogatories, answer and fine.

It is not necessary, in this case, to decide that, where a party has obtained a judgment authorizing the collection of the amount out of the separate estate of a married woman, and it appears on examination supplementary to execution, that, with a view to defeat a recovery, or in order to retain the fund, the married woman has taken it, whether in money or in other form, into her personal possession, so that it cannot be reached by execution, and an order being made that she deliver it to a receiver, or apply it in a proper form upon the judgment debt, she refuses—she cannot be proceeded against as for a criminal

contempt, and punished by fine or imprisonment, or both, and without the privilege of the jail liberties.

It is doubtful, at least, whether that remedy is not available against the party herself, or against any third person in such, or a like case.

However this may be, such was not the proceeding which is here under examination. It was simply an order upon a married woman, a debtor in respect of her separate estate, to pay the debt on proof that she had money sufficient to pay it.

The *habeas corpus* act, though urged upon our attention, does not assist in determining whether the prisoner was entitled to the liberties of the jail, or not. 2 *R. S.* p. 562, *et seq.*

Section 40, which was relied upon, requires the officer before whom a prisoner shall be produced, in obedience to the writ, to forthwith remand the party if it appear that he is detained in custody "for any contempt especially and plainly charged in the commitment, by some court, officer or body having authority to commit for the contempt so charged."

So, also, he is required forthwith to remand the prisoner if it shall appear that he is detained in custody by virtue of any execution issued upon any judgment or decree of any competent court of civil or criminal jurisdiction.

And so, also (section 41), it is his duty to remand whenever it appears that the prisoner is in custody by virtue of "civil process from any court legally constituted, or issued by any officer in the course of judicial proceedings before him, authorized by law," unless certain specified grounds for discharge from custody are found.

These provisions do not determine at all whether a party charged in execution is entitled to the jail liberties, and no more do they decide whether the party in custody for contempt, should be admitted thereto, nor whether the precept now in question is the commitment for contempt here referred to, or the civil process mentioned in section 41.

Section 61 of the article of the statutes, entitled "of escapes, and the liabilities of sheriffs therefor" (2 *R. S.* 437), does undoubtedly present the main question in a form which, in the absence of decided cases, and of other provision of the statutes, which, as heretofore construed, might seem in con-

flict therewith, strongly supports the argument that the prisoner, in a case like the present, if legally held at all, must be kept in close custody. Thus " all prisoners committed to jail upon process for contempt, or committed for misconduct in the cases provided by law, except on attachments for the nonpayment of costs, shall be actually confined and detained within such jail," &c. This, in the connection in which it stands, imports close confinement within the prison.

But this article immediately follows, and is a part of the same title as section 40, which· provides who may be admitted to the liberties of the jail, and must be construed with·it.

If the construction above given to section 40, and the cases cited in support of that construction are correct, then the contempt or misconduct mentioned in this section 61, describes only the cases where the process is for the punishment of a party by· fine or imprisonment, or both.

Notwithstanding the observations already made, I am not able to find legal warrant for the order which was made by the county judge, or for the affirmance thereof.

It is unquestionably the duty of the sheriff holding a prisoner in custody, who is entitled to the liberties of the jail, to accept a proper bond with sufficient sureties, and permit such prisoner " to go at large " within the limits of such liberties, but I do not discover that a judge before whom such prisoner may be brought on *habeas corpus* has any power or authority to give an order or direction to that effect.

The duty of the judge, on the hearing of the matter brought under examination by the *habeas corpus*, and the consequent proceedings, is defined in the statute already referred to. 2 *R. S.* 563 *et seq.*

" If no legal cause be shown for such imprisonment or restraint, or for the continuance thereof, such court or officer shall discharge such party from the custody or restraint under which he is held " (§ 39).

" It shall be the duty of such court or officer, forthwith to remand such party " in the class of cases already above referred to (§ 40).

In cases in which a prisoner is held on a charge of crime, the officer, in certain cases, may let him to bail (§ 43).

"If the party be not entitled to his discharge, and be not bailed, the court or officer shall *remand him to the custody or place him under the restraint from which he was taken,* if the the person under whose custody or restraint he was, be legally entitled thereto ; if not so entitled, he shall be committed by such court or officer to the custody of such officer or person as by law is entitled thereto " (§ 44).

Here is no warrant to the officer to take bail or security of any kind. The prisoner was not held on a charge of any crime, and the judge did not attempt to do so.

But on the other hand, he did "order and adjudge that the said Marinda C. Wheeler" (the prisoner) " is not entitled to her discharge."

Thereupon the peremptory direction of the statute applied, viz: " that he shall *remand* the prisoner *to the custody, or place him under the restraint from which he was taken."*

The order, however, proceeds to declare—" but that she is entitled to the liberties of the jail," and next conditionally to remand, thus, "and that she be remanded to the county jail of Wayne county, unless she give good and sufficient bail, to be approved by said sheriff, for the liberties of the jail."

And the order then proceeds to direct and require the sheriff, upon the tendering of such bail, to accept the same, and declares that thereupon the prisoner shall have the jail liberties.

I have not been able to discover that the officer had any jurisdiction to make such an order. Perhaps I may have overlooked some statute, or other authority, but at present I can only say, that however it might instruct the sheriff in regard to his duty, it was, as an order, wholly without jurisdiction, and inoperative; it neither bound the sheriff to admit to the liberties, nor would protect him from liability for an escape, if he admitted the prisoner to the liberties. His liability, in such case, would depend upon the question whether (independent of such an order) she was entitled to be so admitted, and not whether he acted in obedience to such an order. No such order could be enforced against the sheriff, and he was still left to act upon his own responsibility. If this court should unite in

an opinion that a person committed upon such precept, and for the same cause, is entitled to the jail liberties, sheriffs might perhaps deem it safe to act accordingly, but not even this court can make a mandatory order directing them to take the bond therefor.

It is said, that in truth, the prisoner, being a female, could not be arrested and held on such process, and therefore the officer should have discharged the prisoner. *Code of Pro.* § 179. The question is not before us. The people have not appealed from the order, and of course the appellants do not, and cannot raise it.

The order which was made was, however, without warrant of law. Having adjudged that the prisoner was not entitled to her discharge, he should have remanded her without condition.

On this ground, the judgment of affirmance should be reversed, but without costs.

All the judges except WOODRUFF and CLERKE, JJ., were of opinion that the act charged was a contempt, and that the prisoner was not entitled to the liberties of the jail.

All the judges but CLERKE, J., concurred with WOODRUFF, J., in holding that the judge had no power, on remanding the prisoner, to order the sheriff to take a bond for the liberties.

Order of the general term, and of the county judge, reversed, without costs.